# LETTER OF AGREEMENT

### between

## AMERICA WEST HOLDINGS CORPORATION, AMERICA WEST AIRLINES, INC., US AIRWAYS GROUP, INC., and US AIRWAYS, INC.
### and the

## PILOTS

### in the service of

## AMERICA WEST AIRLINES, INC. AND US AIRWAYS, INC.

### as represented by

## THE AIR LINE PILOTS ASSOCIATION

---

## TRANSITION AGREEMENT

---

THIS LETTER OF AGREEMENT is made and entered into in accordance with the provisions of the Railway Labor Act, as amended (the "Act"), by and between AMERICA WEST HOLDINGS CORPORATION ("AWHC"), AMERICA WEST AIRLINES, INC. ("AMERICA WEST"), US AIRWAYS GROUP, INC. ("US AIRWAYS GROUP"), US AIRWAYS, INC. ("US AIRWAYS"), and the AIR LINE PILOTS in the service of AMERICA WEST and US AIRWAYS, respectively, as represented by the AIR LINE PILOTS ASSOCIATION (hereinafter referred to as "the Association") by and through the Master Executive Councils of the America West and US Airways pilots ("America West MEC" and "US Airways MEC" respectively) (collectively referred to as the "Parties").

WHEREAS, US Airways Group and AWHC have entered into an Agreement and Plan of Merger dated as of May 19, 2005 (the "Merger Agreement"), and

WHEREAS, the Merger Agreement provides that, if it is consummated, US Airways Group will be reorganized and, as reorganized, will own and control America West and US Airways, and

WHEREAS, US Airways Group, AWHC, US Airways and America West (together, the "Airline Parties") intend that, following the consummation of the Merger Agreement, America West and US Airways will continue to operate with two separate pilot workforces until the two pilot workforces are integrated under the provisions herein, and

WHEREAS, the parties wish to provide orderly procedures for the merger of America West and US Airways.

1

THEREFORE, the parties agree:

I.    **Continued Representation of the America West and US Airways Pilots**

    A.    The Airline Parties and the Single Carrier, as defined in Section III. A. below, will continue to recognize the Association as the collective bargaining representative of the America West and US Airways pilots under the Act following the consummation of the Merger Agreement.

    B.    The Parties will continue to recognize each of the America West and US Airways MECs as to their authority and responsibility with respect to their respective collective bargaining agreements until the merger of the two MECs.

II.   **Period of Separate Operations**

    A.    The pilot workforces of America West and US Airways will remain separate and covered by their respective collective bargaining agreements (the "Separate Operations") until Operational Pilot Integration as provided in Section VI. A.

    B.    During Separate Operations:

        1.    US Airways Group will operate both America West and US Airways in accordance with the terms of this Letter of Agreement and the provisions of each carrier's respective collective bargaining agreement, as amended.

        2.    America West may operate under the US Airways designator code and marketing identity. US Airways may operate under the America West designator code and marketing identity.

        3.    The aircraft (including orders and options to purchase or lease aircraft) and the operations of each of America West and US Airways will remain separated. A list of all aircraft in the service of each of America West and US Airways on the effective date of this Letter of Agreement is appended as Attachment A; and the fleet plan for the merged airline (by airline and tail number) is appended to this Letter of Agreement as Attachment B.

        4.    Pilots on the America West Seniority List will operate the aircraft in the service of America West on the effective date of this Letter of Agreement and pilots on the US Airways Seniority List will operate the aircraft in the service of US Airways on the effective date of this Letter of Agreement. Except as provided in paragraph 6. below, no pilot of either airline will fly as a crewmember on an aircraft listed in Attachment A in the fleet of the other airline.

            a)    The Airline Parties will not transfer aircraft listed in Attachment A to the fleet of the other airline.

b)    During the first year following the consummation of the Merger Agreement, America West and US Airways will each maintain not less than 80% of the number of aircraft (excluding SJs as defined in the US Airways agreement as amended by this Letter of Agreement) listed by month for that airline in Attachment B.

c)    For US Airways, the number of minimum aircraft will be re-established one year after the consummation of the Merger Agreement at the lesser of 279 total aircraft (excluding SJs), or the number of total aircraft then operated by US Airways (excluding SJs) less ten percent (10%), rounded to the nearest aircraft, with the daily utilization rate measured monthly as the average daily utilization rate for the prior twelve months less ten percent (10%).

d)    For America West, the number of minimum aircraft will be established one year after the consummation of the Merger Agreement at the lesser of 140 total aircraft (excluding SJs), or the number of total aircraft then operated by America West (excluding SJs) less ten percent (10%), rounded to the nearest aircraft, with the daily utilization rate measured monthly as the average daily utilization rate for the prior twelve months less ten percent (10%).

e)    The current and announced flying, as of the effective date of this agreement, between points west of the Mississippi River and the State of Hawaii will be flown by America West pilots. The current and announced flying, as of the effective date of this agreement, between points east of the Mississippi River and Europe or the Caribbean will be flown by US Airways pilots. Notwithstanding the above, up to two daily round trips to Europe, up to two daily round trips to the Caribbean, and one daily round trip to Hawaii may be flown by pilots of the other airline.

5.    The Airline Parties intend to consolidate operations under the US Airways operating certificate and as such, should the Airline Parties acquire aircraft in excess of the number identified for that airline in Attachment B, such aircraft will operate as part of US Airways. However, in the event the decision is made to consolidate operations under the America West operating certificate, such additional aircraft will operate as part of America West.

a)    The Airline Parties will make reasonable efforts to provide notice to ALPA of the intent to acquire such aircraft not less than ninety (90) days prior to such aircraft entering service. To the extent known, the notice will state the type and number of such aircraft along with the Airline Parties' decision regarding the placement of such aircraft at US Airways or America West.

b)     The Airline Parties will make every effort to establish a bridge training program as soon as possible to facilitate the fair and equitable distribution of flying between the two pilot groups. In the event that a bridge training program exists and the pilots from the carrier receiving the bridge training have completed training, or will complete training prior to the aircraft entering service, then the Parties will meet prior to the operation of any such aircraft in an effort to reach agreement as to which pilot group will operate those aircraft.

c)     The America West MEC and the US Airways MEC will agree internally as to which pilot group shall operate such aircraft or will implement a process, including binding arbitration if necessary, to determine the Association's position regarding the allocation of such flying. In the event that the Airline Parties do not agree with the Association position, then the dispute will be resolved in accordance with Section X. below. The standard to be applied by the Arbitrator in that proceeding will be the fair and equitable allocation of flying between the two pilot groups. Nothing in this paragraph will delay or prevent the Airline Parties from putting such aircraft into revenue service.

6.     America West will not hire new pilots if pilots on the US Airways seniority list remain on furlough, provided that America West may hire a new pilot if all pilots on furlough have been offered recall to US Airways or have been offered positions by America West in the order of seniority. Available positions at America West will be offered to furloughed US Airways pilots under the recall provisions contained in Section 23, paragraph I of the US Airways - ALPA collective bargaining agreement, except that active MDA pilots with recall rights to US Airways will continue to be subject to the applicable freeze/hold provisions of LOA 91, Attachment B "Recall to US Airways". A furloughed US Airways pilot who declines a position as an America West pilot retains the right to be offered the next position offered and also retains the right to be recalled to US Airways in accordance with his US Airways seniority. A US Airways pilot who accepts a position at America West:

a)     will be treated as junior to all pilots who are on the America West seniority list on the effective date of this Letter of Agreement, but pilots on the US Airways seniority list employed by America West under this paragraph 6 will be ranked among themselves in their order on the US Airways seniority list;

b)     will be considered an employee of America West during Separate Operations and subject to the America West collective bargaining agreement;

4

c)   will retain, accrue and be entitled to use his combined longevity at both carriers for all purposes including but not limited to pay (excluding furlough pay, which will be calculated based on time at America West only), benefits, vacation accrual, and eligibility towards pension contributions and health and welfare participation;

d)   may be required to forego recall to US Airways for up to eighteen (18) months from the date of his employment as a pilot for America West;

e)   will retain his position on the US Airways seniority list and will be integrated in the combined seniority list based on his position on the US Airways seniority list;

f)   will not be required to serve a probation period as a pilot for America West;

g)   will not receive furlough pay from US Airways with respect to the period of his service as a pilot for America West;

h)   will be subject to any applicable background checks and employment requirements for pilots returning from furlough.

7.   America West may hire new pilots if all pilots on the US Airways seniority list have been offered recall to US Airways or have been offered a pilot position at America West. New pilots hired during the Separate Operations will be placed by their date of hire on a third seniority list entitled "New Hire Seniority List," will be junior to all pilots on the pilot seniority lists of America West and US Airways on the effective date of this Letter of Agreement, and will continue to be junior to those pilots on the integrated seniority list of America West and US Airways pilots.

8.   In the event that the Airline Parties intend to open or close a domicile or satellite domicile, the Airline Parties will meet and confer with the Association and share the analysis upon which the decision is based. The Airline Parties may close the affected domicile or satellite domicile if the analysis upon which the decision is based establishes that there is a cost savings generated by the closing.

9.   America West and US Airways will not establish TDY positions at a pilot domicile of the other airline.

10.  In the event of America West furloughs, furlough references in this Letter of Agreement will be modified to apply to both pilot groups.

5

III.   **Single Carrier**

    A.    No later than the Operational Pilot Integration, as defined in Section VI.A. below, America West and US Airways will operate as a single carrier with a single FAA air carrier operating certificate employing pilots of America West and US Airways (the "Single Carrier"). The carrier holding such operating certificate will be one corporation.

    B.    The Airline Parties will support the Association's application to the National Mediation Board for recognition of a single transportation system and single pilot craft or class of the Single Carrier.

    C.    The combining of the America West and US Airways MECs will be governed by the Association's Constitution and By-Laws and its Merger and Fragmentation Policy ("ALPA Merger Policy").

IV.   **Seniority List Integration**

    A.    The seniority lists of America West pilots and US Airways pilots will be integrated in accordance with ALPA Merger Policy and submitted to the Airline Parties for acceptance. The Airline Parties will accept such integrated seniority list, including conditions and restrictions, if such list and the conditions and restrictions comply with the following criteria:

        1.    no "system flush" whereby an active pilot may displace any other active pilot from the latter's Position; and

        2.    furloughed pilots may not bump/displace active pilots; and

        3.    no requirement for pilots to be compensated for flying not performed (e.g., differential pay for a position not actually flown); and

        4.    allows pilots who, at the time of implementation of an integrated seniority list, are in the process of completing or who have completed initial qualification training for a new category (e.g., A320 Captain or 757 First Officer) to be assigned to the position for which they have been trained, regardless of their relative standing on the integrated seniority list; and

        5.    does not contain conditions and restrictions that materially increase costs associated with training or company paid moves.

    B.    The Airline Parties will cooperate and respond to reasonable requests for pilot employment data necessary for the seniority integration representatives to implement ALPA Merger Policy subject to agreed terms for confidentiality.

    C.    US Airways, America West and the Single Carrier may not use an integrated pilot seniority list prior to Operational Pilot Integration as defined in Section VI.A. below.

D.     The Association, the America West MEC and the US Airways MEC agree that this Letter of Agreement is not a waiver of any argument which either the America West or US Airways MECs or their seniority integration representatives may make in the seniority integration process nor will this Letter of Agreement be offered or admitted into evidence in a seniority integration arbitration or shown to a mediator except as specified in this paragraph D.  The seniority integration representatives of either MEC may offer this Letter of Agreement into evidence or show it to a mediator as background information and to describe the actual operations of the separate carriers during the Separate Operations.  The provisions for the hiring of pilots and the allocation of flying and equipment contained in this Letter of Agreement do not constitute an admission in the seniority integration process as to the appropriate allocation of flying following the term of this Letter of Agreement, or the manner in which the Airline Parties would have operated in the absence of a merger, or the job entitlements, or equities that arguably underlie the construction of an integrated seniority list, or for any other purpose.

## V.     Negotiation of a Collective Bargaining Agreement

The Association and the Airline Parties will negotiate a single collective bargaining agreement applicable to the merged operations of America West and US Airways (the "Single Agreement") as follows:

A.     The Airline Parties will meet with the Association within thirty (30) days following the effective date of this Letter of Agreement, as defined in Section XII. below, for the purpose of responding to reasonable requests for merger-related operational and financial information, subject to agreed terms for confidentiality.

B.     The Association and the Airline Parties will commence negotiations no later than sixty (60) days following the consummation of the Merger Agreement.

C.     The parties will meet at mutually agreed facilities in the vicinity of Phoenix, Washington, D.C., Las Vegas, and/or Pittsburgh.

D.     At the request of either the Association or the Airline Parties, made not sooner than sixty (60) days following the start of negotiations, the parties will appoint a mediator to facilitate negotiations.

    1.     The mediator, if any, will be one of the following five (5) members of the National Academy of Arbitrators, each having mediation experience in the airline industry, if willing and able to serve:

        a)     Robert Harris

        b)     Richard Bloch

        c)     Fred Horowitz

        d)     Ira Jaffe

     e)     Carol Wittenberg

2.     The parties (unless they otherwise agree) will select a mediator from the above list by strikes alternating between the Association and the Airline Parties collectively with the first strike determined by coin toss.

3.     If the parties select a mediator who is unwilling or unable to serve, as required, they will choose by coin toss one of the last two struck names. If none of the five mediators is willing and able to serve, the parties will request that the last two names on the list of strikes confer and select as mediator another member of the National Academy of Arbitrators with mediation experience in the airline industry.

E.     A mediator, if selected, will assist the parties through facilitation of the process and mediation of differences, including at his or her discretion meetings in joint and separate sessions with the parties and making nonbinding suggestions and recommendations to resolve issues.

F.     A mediator, if selected, will attend all negotiations except as the parties otherwise agree, and the schedule and location of negotiations will not change except as the mediator may determine with agreement of the parties.

G.     The duration clause of the Single Agreement negotiated under this Section V. will replace the respective duration clauses of the America West and US Airways ALPA collective bargaining agreements. In the event such Single Agreement is not reached on or before June 30, 2006, then on June 30, 2006 either the Association or the Airline Parties may decide to suspend negotiations for such Single Agreement depending on the progress at that time, provided, however, that the Airline Parties will continue to be obligated to complete the Operational Pilot Integration within the specified timeframe outlined in Section VI. below. Nothing contained herein shall alter, change, or constitute a waiver of the rights of any party under the Railway Labor Act.

## VI.    Operational Pilot Integration

A.     Except as provided in paragraph B. below, the airline operations of America West and US Airways, with respect to pilots, shall be merged no later than twelve (12) months following the later of (i) completion of the integrated pilot seniority list and (ii) negotiation of the Single Agreement provided that if by that date a single FAA operating certificate has not been issued, the airline operations, with respect to pilots, will be merged effective with the first bid period following thirty (30) days after the issuance of such certificate. The Airline Parties will make every reasonable effort in good faith to secure a single FAA operating certificate for America West and US Airways as promptly as practicable. The merger of the airline operations, with respect to pilots, under this paragraph A. is defined as the "Operational Pilot Integration."

8

B.  The Airline Parties then in existence and the America West and US Airways MECs may jointly agree to implement one or more selected provisions of the Single Agreement prior to Operational Pilot Integration as defined in paragraph A. and apply such provision or provisions to America West, US Airways, or the Single Carrier as the Airline Parties collectively and both MECs may agree.

**VII.  Plan of Reorganization**

A.  ALPA, on behalf of US Airways and America West pilots, will not object to the Plan of Reorganization but will reserve its rights to object to the Plan in regard to executive contracts. This provision is contingent on full approval of the Plan of Reorganization as modified by this Letter of Agreement and by Letter of Agreement #94 (US Airways Group Equity) between ALPA, US Airways Group and US Airways.

B.  The Board of Directors of US Airways Group, Inc. ("Board") will establish a standing committee of the Board called the Labor Committee ("Committee") to meet with representatives of the labor organizations as described in Attachment C of this Letter of Agreement.

C.  The Plan of Reorganization of US Airways Group will provide for profit sharing for pilots employed by US Airways and America West and then by the Single Carrier as follows.

1.  A profit sharing pool, based on the consolidated profits of US Airways Group, to be established at 10% of the pre-tax profit excluding unusual items (as reported, according to GAAP accounting practices) for pre-tax margins ranging from 0.1% to 10%. In addition to the above, 15% of the pre-tax profit excluding unusual items (as reported, according to GAAP accounting practices) for pre-tax margins in excess of 10%.

2.  The portion of the profit sharing pool allocated to pilots of US Airways and America West will be no less than 36%.

3.  Profit sharing will be paid to each pilot who was employed by US Airways or America West during the year in which the profit was earned based on a formula for distribution to be determined by the Association.

D.  The Plan of Reorganization of US Airways and to the extent applicable, US Airways Group will provide that US Airways and US Airways Group assume the ALPA collective bargaining agreement as modified by this Letter of Agreement in accordance with the following terms. US Airways Group and US Airways will amend the Second Amended Joint Plan of Reorganization, including but not limited to Section 8.1(b), consistent with this provision:

"All collective bargaining agreements between US Airways and ALPA, as modified and/or amended from time to time (the "CBAs"), shall be deemed automatically assumed in accordance with the provisions and

9

requirements of sections 365 and 1123 of the Bankruptcy Code as of the Effective Date of the Second Amended Joint Plan of Reorganization. The assumption of the CBAs and the cure of all amounts owed under such CBAs, including but not limited to amounts owed as a result of arbitration awards, indemnification obligations, and the resolution of grievances, which shall all be paid when they become due in the ordinary course by the Reorganized Debtors, shall be in full satisfaction of all Claims and Interests arising under all CBAs between the parties thereto and their predecessors-in-interest. Upon assumption of the ALPA CBAs, all proofs of claim and requests for payment of administrative expenses filed by ALPA in the Debtors' Chapter 11 cases including but not limited to the claims and requests for payments of administrative expenses identified on exhibit -- hereto, shall be deemed withdrawn, without prejudice to the pursuit of grievances, arbitration awards, indemnifications, and related litigation in the ordinary course by ALPA and/or individuals."

## VIII.   Other Terms

A.   The following terms apply to operation of the EMB 190 aircraft:

1.   EMB 190 aircraft will be operated only by US Airways, America West, both carriers, or the Single Carrier.

2.   EMB 190 aircraft will be operated under the respective operating air carrier's collective bargaining agreement as modified by this Letter of Agreement.

3.   EMB 190 aircraft will be operated under the rates of pay and longevity scale set forth in Attachment D to this Letter of Agreement.

4.   EMB 190 aircraft do not count toward the minimum aircraft numbers in the US Airways ALPA collective bargaining agreement or in Section II.B., paragraphs 4.b), 4.c) or 4.d) above.

5.   A US Airways furloughed pilot offered recall to a position as an EMB 190 first officer at US Airways or offered a position as an EMB 190 first officer at America West pursuant to Section II., paragraph 6 of this Letter of Agreement, will be entitled to bypass the offer. In other words, he will not be subject to Section 23(I)4. of the US Airways collective bargaining agreement, without prejudice to his right to be offered recall in seniority order to any further US Airways pilot position (including but not limited to an EMB 190 first officer position) or to be hired for any position by America West under this Letter of Agreement.

B.   Section 1.D.2 of the America West collective bargaining agreement will be modified to increase the maximum seating capacity of jet aircraft flown by Express carriers to a maximum seating capacity of 88 seats (or up to 90 seats if

there are no first class seats)  and/or certificated maximum take off weight of up to 90,000 pounds.

C.   The US Airways and America West collective bargaining agreements will be modified to allow for a combined maximum of ninety-three (93) CRJ-900, or other aircraft within the seating and maximum take-off weight limits specified in Paragraph B above, to be operated in revenue service at any given time at Express Carriers except that for every two (2) aircraft in excess of the combined 360 aircraft (excluding EMB 190 aircraft) operated at both US Airways and America West, that are added to revenue service in the mainline fleet, the Company may allow three (3) additional CRJ-900, or other aircraft within the seating and maximum take-off weight limits specified in paragraph B above, to be operated in revenue service at Express Carriers.

D.   Subject to any applicable statutory limits, employer contributions to the Association's applicable 401(k), or Defined Contribution Plan, will be ten percent (10%) of the pilot's eligible earnings as defined in the applicable plan without an employee or employer matching contribution. Note: For America West pilots, contributions will be effective January 1, 2006.

E.   Check Airmen from both America West and US Airways will be utilized to perform their customary duties and responsibilities for bridge training to a single FAA operating certificate in numbers that are proportional and a manner that is equitable to both groups of pilots. Pilots transitioning to the surviving FAA certificate will be trained to proficiency in accordance with Section 11.A. of the America West - ALPA collective bargaining agreement.

F.   The parties acknowledge that grievances and disputes remain open and unresolved at both US Airways and America West. The parties further acknowledge that resolution of these and any new grievances and disputes would be in the best interests of all parties and would facilitate the smooth transition to a single airline.  The parties therefore agree to utilize, to the maximum extent possible, expedited dispute resolution processes at each carrier in order to promptly resolve all open grievances and disputes.

IX.   **Administration and Expenses**

A.   Reasonable requests submitted for the release of pilots of each airline as designated by the respective MECs for participation in merger duties will be granted unless the release is not feasible due to operational considerations.

B.   Airline Parties will establish a Merger Fund to help defray Association costs associated with merger activities as follows:

1.   A Merger Fund in the amount of $300,000 will be established for each respective MEC.

11

2.   Each MEC may distribute their portion of the Merger Fund to their membership as they see fit or may use the funds to help defray expenses, which would otherwise not be covered by the Airline Parties.

3.   The Merger Fund is payable to the Association following the submission and the Airline Parties' acceptance of a merged seniority list.

C.   America West will provide flight pay loss of up to eighty-four (84) hours per month to the America West MEC beginning the month following the effective date of this Letter of Agreement. Additionally, America West will provide flight pay loss for three (3) America West Negotiating Committee members beginning thirty (30) days following the consummation of the Merger Agreement and continuing during the period that contract negotiations continue or through June 30, 2006, whichever is later.

D.   Except as otherwise provided in this Section IX, or in the applicable collective bargaining agreement, each party will be responsible for the compensation, travel and other expenses of its representatives, witnesses, and other participants required to complete merger duties. The Airline Parties will provide Positive Space travel on the respective airlines for members of the Association's negotiating committees in connection with merger duties. Space positive travel will only be provided if there is an available seat at the time of booking and revenue passengers will not be bumped to accommodate Positive Space travel.

## X.   Disputes as to Interpretation or Application of this Letter of Agreement

The Airline Parties collectively and the Association, except as they otherwise agree, will resolve as follows a dispute between them in the interpretation or application of this Letter of Agreement or pursuant to Section II.B.5.c. above:

A.   The Airline Parties collectively and the Association will each designate a representative for receipt of issues under this Section.

B.   A party will raise an issue for resolution under this Section X by submitting it to the representative of the other side, identifying it as an issue under this Letter of Agreement.

C.   The parties will discuss the issue but, if they do not resolve it within one (1) week of its submission under paragraph B, the submitting party may refer it to a Board of Adjustment (under Section 204 of the Act) of two (2) persons appointed by the Association, two (2) by the Airline Parties collectively, and a neutral arbitrator either agreed or selected from the following list using the alternate strike method (with first strike determined by coin toss), provided that a mediator under Section V. above may not serve as an arbitrator under this Section X.

1.   Richard Bloch

2.   Carol Wittenberg

3.   Lawrence Holden

4.   Edward Krinsky

5.   Ira Jaffe

D.   Once appointed, an arbitrator will continue to serve for all disputes under this Letter of Agreement, until unwilling or unable to serve or removed by agreement of the Airline Parties collectively and the Association.

E.   Except as the parties otherwise agree, a Board of Adjustment will hear a dispute commencing not later than thirty (30) days after referral and ending not later than thirty (30) days after the first hearing day and will decide a dispute not later than thirty (30) days after the final hearing day.

F.   A Board of Adjustment under this Letter of Agreement has jurisdiction only to hear and determine an issue of interpretation or application of this Letter of Agreement or an unresolved dispute under Section II.B.5.c above, properly submitted under this Section X and has no jurisdiction to modify or supplement any term of this Letter of Agreement or any other agreement between any of the parties to this Letter of Agreement.

G.   A decision of a Board of Adjustment on an issue within its jurisdiction and rendered in accordance with the requirements of this Letter of Agreement is final and binding on the parties to the extent provided under Section 204 of the Act.

H.   The following procedures apply to the Board of Adjustment under this Section X:

1.   Either Party will have the right to call witnesses at a hearing.   The Company will release witnesses and representatives requested by the Association, provided that such request is reasonable and will not cause a disruption in service.

2.   Each Party will assume the compensation, travel expenses, and other expenses of the witnesses it calls or summons.

3.   The Parties will bear equally the expenses and reasonable compensation of the arbitrator.  The Parties also will share equally other expenses necessary for the proper conduct of the business of the Board, such as fees for conference room facilities and transcription of the proceedings.

4.   The Board will make every effort to agree on a location for the hearings and if they cannot agree hearings will be held in either Phoenix or Pittsburgh, as determined by coin toss.

5.   So far as space is available, an employee of any of the Airline Parties who is a grievant, witness, pilot representative, or Board Member shall receive "Company Business – Space Available" transportation over the lines of an

Airline Party or the lines of other companies with which the an Airline Party has exchange or reciprocal transportation agreements from any on-line station to the point of hearing and return, to the extent permitted by law.

**XI.    Duration of Terms of Section VIII, Paragraph A and Attachment D**

Neither party may serve a notice of intended change under Section 6 of the Railway Labor Act that covers or applies to Section VIII., paragraph A and Attachment D of this Letter of Agreement except in accordance with the following:

The parties will commence bargaining for new rates associated with EMB 190 aircraft no earlier than June 1, 2015 and no later than July 1, 2015. If the parties have not reached a tentative agreement for such rates by January 1, 2016, and the basic agreement in place on January 1, 2016 is:

A.    amendable within twelve (12) months, ALPA may service notice of intended change covering such rates under the next Section 6 negotiation period; or

B.    not amendable within twelve (12) months, either party may initiate an interest arbitration process in which the issue will be: what should be the rates of pay for the EMB 190 aircraft? The interest arbitration hearing will be held no later than ninety (90) days following the written request of either party pursuant to this provision.

C.    Notwithstanding paragraph B above, if, at any time after January 1, 2013 and prior to June 1, 2015, at least four (4) other U.S. certificated air carriers have placed at least twenty-five (25) EMB 190 in service and if the average of either the captain or first officer top of scale rates of such other air carriers exceeds the top of scale pay rates for such aircraft specified in Attachment D, then either party may serve a Section 6 notice with respect to EMB 190 rates of pay. For purposes of this paragraph, the top of scale rate of such other air carriers will be determined where appropriate by calculating a 90-hour blended rate in the same manner as used to determine the rates in Attachment D.

**XII.   Effective Date, Modification, Status of Letter of Agreement, and Duration**

This Letter of Agreement:

A.    Will take effect on the date of execution set forth below;

B.    May be modified by written agreement of the Association and the Airline Parties collectively;

C.    Does not alter or modify any term of any agreement between the Association and an Airline Party, which remain in full force and effect in accordance with their terms, except as set forth herein.

14

D.  Governs in case of conflict between one of its terms and a provision of a collective bargaining agreement between the Association and an Airline Party;

E.  Will remain in effect in accordance with its terms until each of the provisions herein has been fulfilled, unless sooner terminated by

1.  Written agreement of the Association and the Airline Parties collectively; or

2.  Termination of the Merger Agreement;

3.  At the discretion of the Association, failure of consummation of the Merger Agreement prior to October 31, 2005.

IN WITNESS WHEREOF, the parties hereto have executed this Letter of Agreement effective this 23rd day of September, 2005.

AIR LINE PILOTS ASSOCIATION:

By: _____

    Duane E. Woerth, President


By: _____

    JR Baker, Chairman
    America West Airlines MEC


By: _____

    William D. Pollock, Chairman
    US Airways MEC


AMERICA WEST HOLDINGS CORPORATION:

By: _____

    W. Douglas Parker
    Chairman, President, and Chief Executive
    Officer

AMERICA WEST AIRLINES, INC.:

By: _____

    Jeffrey D. McClelland
    Executive Vice President, Operations and Chief
    Operating Officer

US AIRWAYS GROUP, INC.:

By: _____

    Bruce R. Lakefield
    President and Chief Executive Officer

US AIRWAYS, INC.:

By: _____

    Jerrold A. Glass
    Executive Vice President and Chief Human
    Resources Officer

Witnesses:

By: _____
Kim Allen Snider, Vice Chairman
US Airways MEC

By: _____
John McIlvenna, Vice Chairman
America West Airlines MEC

By: _____
Douglas L. Mowery, Chairman
US Airways Negotiating Committee

By: _____
Mark Burdick, Chairman
America West Airlines Negotiating Committee

By: _____
Dan Scola
US Airways Negotiating Committee

By: _____
Tony Lozano
America West Airlines Negotiating Committee

By: _____
David G. Seymour
America West Airlines, Inc.
Vice President Operations Control and Planning

By: _____
E. Allen Hemenway
US Airways, Inc.
Vice President Labor Relations

By: _____
Beth Holdren
US Airways, Inc.
Managing Director Labor Relations

By: _____
Todd F. Jewett
US Airways, Inc.
Manager Labor Relations

## Attachment A: Current Fleet Count, US

Date: August 31, 2005

| A319, Count = 49 | | A319, Count = 10 | | A320, Count = 24 | | A321, Count = 28 | |
|---|---|---|---|---|---|---|---|
| Aircraft | Return Date | Aircraft | Return Date | Aircraft | Return Date | Aircraft | Return Date |
| N700UW | | N760US | | N101UW | 10/1/2005 | N161UW | |
| N701UW | | N762US | | N102UW | | N162UW | |
| N702UW | | N763US | | N103US | | N163US | |
| N703UW | | N764US | | N104UW | | N164UW | |
| N704US | | N765US | | N105UW | | N165US | |
| N705UW | | N766US | | N106US | | N166US | |
| N706US | 9/30/2005 | N767UW | | N107US | | N167US | |
| N707US | 11/1/2005 | N768US | | N108UW | | N168US | |
| N708UW | | N769US | | N109UW | | N169UW | |
| N709UW | | N770UW | | N110UW | | N170US | |
| N710UW | | | | N111US | | N171US | |
| N711UW | | | | N112US | | N172US | |
| N712US | | | | N113UW | | N173US | |
| N713UW | | | | N114UW | | N174US | |
| N714US | | | | N115US | 10/1/2005 | N175US | |
| N715UW | | | | N116US | 11/1/2005 | N176UW | |
| N716UW | | | | N117UW | | N177US | |
| N717UW | | | | N118US | | N178US | |
| N719US | 9/2/2005 | | | N119US | | N179US | |
| N720US | 9/20/2005 | | | N120US | 11/1/2005 | N180US | |
| N721UW | | | | N121UW | | N181UW | |
| N722US | | | | N122US | | N182UW | |
| N723UW | | | | N123UW | | N183UW | |
| N724UW | | | | N124US | | N184US | |
| N725UW | | | | | | N185UW | |
| N730US | | | | | | N186US | |
| N732US | | | | | | N187US | |
| N733UW | | | | | | N188US | |
| N737US | | | | | | | |
| N738US | | | | | | | |
| N739US | 9/14/2005 | | | | | | |
| N740UW | | | | | | | |
| N741UW | | | | | | | |
| N742US | | | | | | | |
| N744US | | | | | | | |
| N745UW | | | | | | | |
| N746UW | | | | | | | |
| N747UW | | | | | | | |
| N748UW | | | | | | | |
| N749US | | | | | | | |
| N750UW | | | | | | | |
| N751UW | | | | | | | |
| N752US | | | | | | | |
| N753US | | | | | | | |
| N754UW | | | | | | | |
| N755US | | | | | | | |
| N756US | | | | | | | |
| N757UW | | | | | | | |
| N758US | | | | | | | |

### A330, Count = 9

| Aircraft | Return Date |
|---|---|
| N670UW | |
| N671UW | |
| N672UW | |
| N673UW | |
| N674UW | |
| N675US | |
| N676UW | |
| N677UW | |
| N678US | |

18

## Attachment A: Current Fleet Count, US (Continued)

### Date: August 31, 2005

| **B737-300, Count = 47** | | **B737-300, Count = 12** | | **B737-400, Count = 43** | | **B757, Count = 31** | |
|---|---|---|---|---|---|---|---|
| Aircraft | Return Date | Aircraft | Return Date | Aircraft | Return Date | Aircraft | Return Date |
| N300AU | 1/31/2006 | N558AU | 9/15/05-9/30/05 | N404US | | N600AU | |
| N334US | | N560AU | 9/15/05-9/30/05 | N405US | | N601AU | |
| N335US | | N563AU | 12/1/2005 | N406US | | N602AU | |
| N340US | | N573US | 9/15/05-9/30/05 | N409US | | N603AU | |
| N350US | 9/15/05-9/30/05 | N574US | | N417US | | N604AU | |
| N352US | 2/1/2006 | N575US | 1/15/2006 | N418US | | N605AU | |
| N353US | 2/1/2006 | N577US | | N419US | | N606AU | |
| N354US | 1/15/2006 | N588US | | N420US | | N607AU | |
| N355US | 1/15/2006 | N589US | | N421US | | N608AU | |
| N356US | 1/15/2006 | N590US | | N422US | | N609AU | |
| N373US | 12/10/2005 | N591US | | N423US | | N610AU | |
| N374US | 10/28/2005 | N592US | | N424US | | N611AU | |
| N375US | 2/10/2006 | | | N425US | | N612AU | |
| N376US | 10/15/2005 | | | N426US | | N613AU | |
| N383US | 2/7/2006 | | | N427US | | N614AU | |
| N384US | 11/14/2005 | | | N430US | | N617AU | |
| N385US | 9/15/05-9/30/05 | | | N432US | | N619AU | |
| N387US | 9/15/05-9/30/05 | | | N433US | | N620AU | |
| N389US | 9/15/05-9/30/05 | | | N434US | | N621AU | |
| N391US | 12/10/2005 | | | N435US | | N622AU | |
| N392US | 10/17/2005 | | | N438US | | N623AU | |
| N393US | 1/30/2006 | | | N439US | | N624AU | |
| N394US | 1/7/2006 | | | N440US | | N625VJ | |
| N395US | 12/9/2005 | | | N441US | 6/1/2009 | N626AU | |
| N396US | 11/14/2005 | | | N442US | 12/1/2009 | N627AU | |
| N397US | 12/10/2005 | | | N443US | 9/1/2009 | N628AU | |
| N504AU | | | | N444US | | N629AU | |
| N505AU | | | | N445US | 6/1/2009 | N630AU | |
| N506AU | | | | N446US | 9/15/05-9/30/05 | N631AU | |
| N511AU | | | | N447US | 9/15/05-9/30/05 | N632AU | |
| N512AU | | | | N448US | 9/15/05-9/30/05 | N633AU | |
| N514AU | | | | N449US | 7/1/2009 | | |
| N515AU | | | | N775AU | 9/1/2009 | | |
| N516AU | | | | N776AU | 8/1/2009 | | |
| N517AU | | | | N777AU | 9/1/2009 | | |
| N518AU | | | | N778AU | 10/1/2009 | **B767, Count = 10** | |
| N519AU | 9/10/2005 | | | N779AU | 10/1/2009 | Aircraft | Return Date |
| N520AU | 9/2/2005 | | | N780AU | 10/1/2009 | N645US | |
| N522AU | | | | N781AU | | N646US | |
| N525AU | | | | N782AU | | N648US | |
| N526AU | | | | N783AU | | N649US | |
| N527AU | | | | N784AU | | N650US | |
| N529AU | | | | N785AU | | N651US | |
| N530AU | | | | | | N652US | |
| N531AU | | | | | | N653US | |
| N532AU | | | | | | N655US | |
| N533AU | | | | | | N656US | |

19

## Attachment A: Current Fleet Count, AWA
Date: August 31, 2005

| B737-300, Count = 37 | | A319, Count = 34 | | A320, Count = 47 | | A320, Count = 12 | |
|---|---|---|---|---|---|---|---|
| Aircraft | Return Date | Aircraft | Return Date | Aircraft | Return Date | Aircraft | Return Date |
| N154AW | | N801AW | | N601AW | | N667AW | |
| N155AW | | N802AW | | N602AW | | N668AW | |
| N156AW | | N803AW | | N603AW | | N669AW | |
| N157AW | | N804AW | | N604AW | | N670AW | 11/1/2005 |
| N158AW | | N805AW | | N605AW | | N671AW | 10/1/2005 |
| N160AW | | N806AW | | N619AW | | N672AW | |
| N164AW | | N807AW | | N620AW | | N673AW | |
| N166AW | | N808AW | | N621AW | | N674AW | |
| N168AW | | N809AW | | N622AW | | N675AW | |
| N173AW | | N810AW | | N624AW | | N676AW | |
| N174AW | | N812AW | | N625AW | | N677AW | |
| N175AW | | N813AW | | N626AW | | N678AW | |
| N302AW | | N814AW | | N627AW | | | |
| N303AW | | N815AW | | N628AW | | | |
| N305AW | | N816AW | | N629AW | | | |
| N306AW | | N817AW | | N631AW | | | |
| N307AW | | N818AW | | N632AW | | | |
| N308AW | | N819AW | | N633AW | | | |
| N309AW | | N820AW | | N634AW | | | |
| N311AW | | N821AW | | N636AW | | | |
| N312AW | | N822AW | | N637AW | | | |
| N313AW | | N823AW | | N638AW | 9/15/2005 | | |
| N314AW | | N824AW | | N639AW | 12/1/2005 | | |
| N315AW | | N825AW | | N640AW | | | |
| N316AW | | N826AW | | N642AW | | | |
| N322AW | | N827AW | | N644AW | | | |
| N323AW | | N828AW | | N645AW | | | |
| N324AW | 9/15/2005 | N829AW | | N646AW | | | |
| N325AW | 2/1/2006 | N830AW | | N647AW | | | |
| N326AW | 5/1/2006 | N831AW | | N648AW | | | |
| N327AW | 9/15/2005 | N832AW | | N649AW | | | |
| N328AW | | N833AW | | N650AW | | | |
| N331AW | 8/1/2006 | N834AW | | N651AW | | B757, Count = 13 | |
| N332AW | | N835AW | | N652AW | | Aircraft | Return Date |
| N334AW | | | | N653AW | | N901AW | |
| N335AW | | | | N654AW | | N902AW | |
| N336AW | 4/1/2006 | | | N655AW | | N903AW | |
| | | | | N656AW | | N904AW | |
| | | | | N657AW | | N905AW | |
| | | | | N658AW | | N906AW | |
| | | | | N659AW | | N907AW | 3/1/2006 |
| | | | | N660AW | | N908AW | |
| | | | | N661AW | | N909AW | |
| | | | | N662AW | | N910AW | |
| | | | | N663AW | | N913AW | |
| | | | | N664AW | | N914AW | |
| | | | | N665AW | | N915AW | |

20

## Attachment B: Fleet Plan, US

### Date: August 31, 2005

### A319

| Aircraft | Return Date | Add Date |
|---|---|---|
| N700UW | | |
| N701UW | | |
| N702UW | | |
| N703UW | | |
| N704US | | |
| N705UW | | |
| N706US | 9/30/2005 | |
| N707US | 11/1/2005 | |
| N708UW | | |
| N709UW | | |
| N710UW | | |
| N711UW | | |
| N712US | | |
| N713UW | | |
| N714US | | |
| N715UW | | |
| N716UW | | |
| N717UW | | |
| N719US | 9/2/2005 | |
| N720US | 9/20/2005 | |
| N721UW | | |
| N722US | | |
| N723UW | | |
| N724UW | | |
| N725UW | | |
| N730US | | |
| N732US | | |
| N733UW | | |
| N737US | | |
| N738US | | |
| N739US | 9/14/2005 | |
| N740UW | | |
| N741UW | | |
| N742US | | |
| N744US | | |
| N745UW | | |
| N746UW | | |
| N747UW | | |
| N748UW | | |
| N749US | | |
| N750UW | | |
| N751UW | | |
| N752US | | |
| N753US | | |
| N754UW | | |
| N755US | | |
| N756US | | |

### A319 (cont)

| Aircraft | Return Date | Add Date |
|---|---|---|
| N757UW | | |
| N758US | | |
| N760US | | |
| N762US | | |
| N763US | | |
| N764US | | |
| N765US | | |
| N766US | | |
| N767UW | | |
| N768US | | |
| N769US | | |
| N770UW | | |

### A320

| Aircraft | Return Date | Add Date |
|---|---|---|
| N101UW | 10/1/2005 | |
| N102UW | | |
| N103US | | |
| N104UW | | |
| N105UW | | |
| N106US | | |
| N107US | | |
| N108UW | | |
| N109UW | | |
| N110UW | | |
| N111US | | |
| N112US | | |
| N113UW | | |
| N114UW | | |
| N115US | 10/1/2005 | |
| N116US | 11/1/2005 | |
| N117UW | | |
| N118US | | |
| N119US | | |
| N120US | 11/1/2005 | |
| N121UW | | |
| N122US | | |
| N123UW | | |
| N124US | | |
| TBD | | 2010 |
| TBD | | 2010 |
| TBD | | 2010 |
| TBD | | 2010 |
| TBD | | 2010 |
| TBD | | 2010 |

### A321

| Aircraft | Return Date | Add Date |
|---|---|---|
| N161UW | | |
| N162UW | | |
| N163US | | |
| N164UW | | |
| N165US | | |
| N166US | | |
| N167US | | |
| N168US | | |
| N169UW | | |
| N170US | | |
| N171US | | |
| N172US | | |
| N173US | | |
| N174US | | |
| N175US | | |
| N176UW | | |
| N177US | | |
| N178US | | |
| N179UW | | |
| N180US | | |
| N181UW | | |
| N182UW | | |
| N183UW | | |
| N184US | | |
| N185UW | | |
| N186US | | |
| N187US | | |
| N188US | | |
| TBD | | 2009 |
| TBD | | 2009 |
| TBD | | 2009 |
| TBD | | 2009 |
| TBD | | 2009 |
| TBD | | 2010 |
| TBD | | 2010 |
| TBD | | 2010 |
| TBD | | 2010 |
| TBD | | 2010 |
| TBD | | 2010 |
| TBD | | 2010 |

## Attachment B: Fleet Plan, US (Continued)

Date: August 31, 2005

### B737-300

| Aircraft | Return Date | Add Date |
|---|---|---|
| N300AU | 1/31/2006 | |
| N334US | | |
| N335US | | |
| N340US | | |
| N350US | 9/15/05-9/30/05 | |
| N352US | 2/1/2006 | |
| N353US | 2/1/2006 | |
| N354US | 1/15/2006 | |
| N355US | 1/15/2006 | |
| N356US | 1/15/2006 | |
| N373US | 12/10/2005 | |
| N374US | 10/28/2005 | |
| N375US | 2/10/2006 | |
| N376US | 10/15/2005 | |
| N383US | 2/7/2006 | |
| N384US | 11/14/2005 | |
| N385US | 9/15/05-9/30/05 | |
| N387US | 9/15/05-9/30/05 | |
| N389US | 9/15/05-9/30/05 | |
| N391US | 12/10/2005 | |
| N392US | 10/17/2005 | |
| N393US | 1/30/2006 | |
| N394US | 1/7/2006 | |
| N395US | 12/9/2005 | |
| N396US | 11/14/2005 | |
| N397US | 12/10/2005 | |
| N504AU | | |
| N505AU | | |
| N506AU | | |
| N511AU | | |
| N512AU | | |
| N514AU | | |
| N515AU | | |
| N516AU | | |
| N517AU | | |
| N518AU | | |
| N519AU | 9/10/2005 | |
| N520AU | 9/2/2005 | |
| N522AU | | |
| N525AU | | |
| N526AU | | |
| N527AU | | |
| N529AU | | |
| N530AU | | |
| N531AU | | |
| N532AU | | |
| N533AU | | |

### B737-300 (cont)

| Aircraft | Return Date | Add Date |
|---|---|---|
| N558AU | 9/15/05-9/30/05 | |
| N560AU | 9/15/05-9/30/05 | |
| N563AU | 12/1/2005 | |
| N573US | 9/15/05-9/30/05 | |
| N574US | | |
| N575US | 1/15/2006 | |
| N577US | | |
| N588US | | |
| N589US | | |
| N590US | | |
| N591US | | |
| N592US | | |
| TBD | 12/1/2009 | |
| TBD | 12/1/2009 | |
| TBD | 1/1/2010 | |

### B737-400

| Aircraft | Return Date | Add Date |
|---|---|---|
| N404US | | |
| N405US | | |
| N406US | | |
| N409US | | |
| N417US | | |
| N418US | | |
| N419US | | |
| N420US | | |
| N421US | | |
| N422US | | |
| N423US | | |
| N424US | | |
| N425US | | |
| N426US | | |
| N427US | | |
| N430US | | |
| N432US | | |
| N433US | | |
| N434US | | |
| N435US | | |
| N438US | | |
| N439US | | |
| N440US | | |
| N441US | 6/1/2009 | |
| N442US | 12/1/2009 | |
| N443US | 9/1/2009 | |
| N444US | | |
| N445US | 6/1/2009 | |
| N446US | 9/15/05-9/30/05 | |
| N447US | 9/15/05-9/30/05 | |
| N448US | 9/15/05-9/30/05 | |
| N449US | 7/1/2009 | |
| N775AU | 9/1/2009 | |
| N776AU | 8/1/2009 | |
| N777AU | 9/1/2009 | |
| N778AU | 10/1/2009 | |
| N779AU | 10/1/2009 | |
| N780AU | 10/1/2009 | |
| N781AU | | |
| N782AU | | |
| N783AU | | |
| N784AU | | |
| N785AU | | |

## Attachment B: Fleet Plan, US (Continued)

Date: August 31, 2005

### A330

| Aircraft | Return Date | Add Date |
|---|---|---|
| N670UW | | |
| N671UW | | |
| N672UW | | |
| N673UW | | |
| N674UW | | |
| N675US | | |
| N676UW | | |
| N677UW | | |
| N678US | | |

### A350

| Aircraft | Return Date | Add Date |
|---|---|---|
| TBD | | 2011 |
| TBD | | 2011 |
| TBD | | 2011 |
| TBD | | 2011 |
| TBD | | 2012 |
| TBD | | 2012 |
| TBD | | 2012 |
| TBD | | 2012 |
| TBD | | 2012 |
| TBD | | 2012 |
| TBD | | 2012 |
| TBD | | 2012 |
| TBD | | 2013 |
| TBD | | 2013 |
| TBD | | 2013 |
| TBD | | 2013 |
| TBD | | 2013 |
| TBD | | 2013 |
| TBD | | 2013 |
| TBD | | 2013 |

### B757

| Aircraft | Return Date | Add Date |
|---|---|---|
| N600AU | | |
| N601AU | | |
| N602AU | | |
| N603AU | | |
| N604AU | | |
| N605AU | | |
| N606AU | | |
| N607AU | | |
| N608AU | | |
| N609AU | | |
| N610AU | | |
| N611AU | | |
| N612AU | | |
| N613AU | | |
| N614AU | | |
| N617AU | | |
| N619AU | | |
| N620AU | | |
| N621AU | | |
| N622AU | | |
| N623AU | | |
| N624AU | | |
| N625VJ | | |
| N626AU | | |
| N627AU | | |
| N628AU | | |
| N629AU | | |
| N630AU | | |
| N631AU | | |
| N632AU | | |
| N633AU | | |

### B767

| Aircraft | Return Date | Add Date |
|---|---|---|
| N645US | | |
| N646US | | |
| N648US | | |
| N649US | | |
| N650US | | |
| N651US | | |
| N652US | | |
| N653US | | |
| N655US | | |
| N656US | | |

## Attachment B: Fleet Plan, AWA

Date: August 31, 2005

| A319 | | | A320 | | | A320 (cont) | | |
|---|---|---|---|---|---|---|---|---|
| Aircraft | Return Date | Add Date | Aircraft | Return Date | Add Date | Aircraft | Return Date | Add Date |
| N801AW | | | N601AW | | | N661AW | | |
| N802AW | | | N602AW | | | N662AW | | |
| N803AW | | | N603AW | | | N663AW | | |
| N804AW | | | N604AW | | | N664AW | | |
| N805AW | | | N605AW | | | N665AW | | |
| N806AW | | | N619AW | | | N667AW | | |
| N807AW | | | N620AW | | | N668AW | | |
| N808AW | | | N621AW | | | N669AW | | |
| N809AW | | | N622AW | | | N670AW | 11/1/2005 | |
| N810AW | | | N624AW | | | N671AW | 10/1/2005 | |
| N812AW | | | N625AW | | | N672AW | | |
| N813AW | | | N626AW | | | N673AW | | |
| N814AW | | | N627AW | | | N674AW | | |
| N815AW | | | N628AW | | | N675AW | | |
| N816AW | | | N629AW | | | N676AW | | |
| N817AW | | | N631AW | | | N677AW | | |
| N818AW | | | N632AW | | | N678AW | | |
| N819AW | | | N633AW | | | N679AW | | 12/15/2005 |
| N820AW | | | N634AW | | | N680AW | | 12/15/2005 |
| N821AW | | | N636AW | | | N681AW | | 5/15/2009 |
| N822AW | | | N637AW | | | N682AW | | 7/15/2009 |
| N823AW | | | N638AW | 9/15/2005 | | N683AW | | 7/15/2009 |
| N824AW | | | N639AW | 12/1/2005 | | N684AW | | 8/15/2009 |
| N825AW | | | N640AW | | | N685AW | | 9/15/2009 |
| N826AW | | | N642AW | | | N686AW | | 10/15/2009 |
| N827AW | | | N644AW | | | N687AW | | 11/15/2009 |
| N828AW | | | N645AW | | | N688AW | | 12/15/2009 |
| N829AW | | | N646AW | | | | | |
| N830AW | | | N647AW | | | | | |
| N831AW | | | N648AW | | | | | |
| N832AW | | | N649AW | | | | | |
| N833AW | | | N650AW | | | | | |
| N834AW | | | N651AW | | | | | |
| N835AW | | | N652AW | | | | | |
| N836AW | | 10/15/2005 | N653AW | | | | | |
| N837AW | | 11/15/2005 | N654AW | | | | | |
| N838AW | | 11/15/2005 | N655AW | | | | | |
| N839AW | | 2/15/2006 | N656AW | | | | | |
| N840AW | | 2/15/2006 | N657AW | | | | | |
| N841AW | | 3/15/2009 | N658AW | | | | | |
| N842AW | | 4/15/2009 | N659AW | | | | | |
| N843AW | | 12/15/2009 | N660AW | | | | | |

**Attachment B: Fleet Plan, AWA (Continued)**

Date: August 31, 2005

| 737-300 | | | B757 | | |
|---|---|---|---|---|---|
| Aircraft | Return Date | Add Date | Aircraft | Return Date | Add Date |
| N154AW | | | N901AW | | |
| N155AW | | | N902AW | | |
| N156AW | | | N903AW | | |
| N157AW | | | N904AW | | |
| N158AW | | | N905AW | | |
| N160AW | | | N906AW | | |
| N164AW | | | N907AW | 3/1/2006 | |
| N166AW | | | N908AW | | |
| N168AW | | | N909AW | | |
| N173AW | | | N910AW | | |
| N174AW | | | N913AW | | |
| N175AW | | | N914AW | | |
| N302AW | | | N915AW | | |
| N303AW | | | | | |
| N305AW | | | | | |
| N306AW | | | | | |
| N307AW | | | | | |
| N308AW | | | | | |
| N309AW | | | | | |
| N311AW | | | | | |
| N312AW | | | | | |
| N313AW | | | | | |
| N314AW | | | | | |
| N315AW | | | | | |
| N316AW | | | | | |
| N322AW | | | | | |
| N323AW | | | | | |
| N324AW | 9/15/2005 | | | | |
| N325AW | 2/1/2006 | | | | |
| N326AW | 5/1/2006 | | | | |
| N327AW | 9/15/2005 | | | | |
| N328AW | | | | | |
| N331AW | 8/1/2006 | | | | |
| N332AW | | | | | |
| N334AW | | | | | |
| N335AW | | | | | |
| N336AW | 4/1/2006 | | | | |

25

Attachment C

The Board of Directors of US Airways Group, Inc. ("Board") will establish a standing committee of the Board called the Labor Committee ("Committee") to meet with representatives of the labor organizations previously entitled to a Board seat to discuss issues, ideas and concerns related to those unions.  The Committee will be structured as follows:

1.  The Committee will hold meetings quarterly prior to regularly scheduled meetings of the Board.

2.  Each labor organization will be limited to one attendee at such meetings.

3.  The Committee will be comprised of three (3) members of the Board, including the Chairman and Vice Chairman.

4.  Subject to an appropriate non-disclosure/confidentiality agreement, the Association representative will receive a briefing book and other documentary information that will be, or is, presented to the full Board.

5.  The Committee will make an oral report to the full Board after each such meeting with the labor organizations and will report back to the labor organizations regarding the disposition of such matters by the Board.

6.  Labor representatives may discuss problems and issues, and present ideas and suggestions to the Committee.  However, the Committee will not discuss items related to the application or interpretation of the collective bargaining agreements nor will they have the authority or ability to enter into, bind or negotiate on behalf of US Airways Group with respect to any collectively bargained matter.

7.  The Chairman and CEO will meet with labor representatives on a quarterly basis.  Such meetings will be held within one (1) week of US Airways Group's quarterly earnings release and will include other members of senior management.  All attendees will be required to execute confidentiality agreements prior to receiving a briefing from the CEO.

26

### Attachment D

| % Incr / (Decr) | US EMB 190 Captain Rates | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 0.0% | 0.0% | 0.0% | 0.0% | 2.0% | 0.0% | 2.0% | 0.0% |
| YEAR | 2006 - 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 |
| 1 | 78.57 | 78.57 | 78.57 | 78.57 | 80.14 | 80.14 | 81.74 | 81.74 |
| 2 | 80.36 | 80.36 | 80.36 | 80.36 | 81.96 | 81.96 | 83.60 | 83.60 |
| 3 | 82.14 | 82.14 | 82.14 | 82.14 | 83.79 | 83.79 | 85.46 | 85.46 |
| 4 | 83.96 | 83.96 | 83.96 | 83.96 | 85.63 | 85.63 | 87.35 | 87.35 |
| 5 | 85.82 | 85.82 | 85.82 | 85.82 | 87.54 | 87.54 | 89.29 | 89.29 |
| 6 | 87.53 | 87.53 | 87.53 | 87.53 | 89.28 | 89.28 | 91.07 | 91.07 |
| 7 | 89.29 | 89.29 | 89.29 | 89.29 | 91.07 | 91.07 | 92.90 | 92.90 |
| 8 | 91.07 | 91.07 | 91.07 | 91.07 | 92.89 | 92.89 | 94.75 | 94.75 |
| 9 | 92.89 | 92.89 | 92.89 | 92.89 | 94.75 | 94.75 | 96.64 | 96.64 |
| 10 | 94.74 | 94.74 | 94.74 | 94.74 | 96.64 | 96.64 | 98.57 | 98.57 |
| 11 | | 96.64 | 96.64 | 96.64 | 98.58 | 98.58 | 100.55 | 100.55 |
| 12 | | | 98.58 | 98.58 | 100.55 | 100.55 | 102.56 | 102.56 |

| % Incr / (Decr) | US EMB 190 First Officer Rates | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 0.0% | 0.0% | 0.0% | 0.0% | 2.0% | 0.0% | 2.0% | 0.0% |
| YEAR | 2006 - 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 |
| 1 | 41.22 | 41.22 | 41.22 | 41.22 | 42.05 | 42.05 | 42.89 | 42.89 |
| 2 | 43.72 | 43.72 | 43.72 | 43.72 | 44.60 | 44.60 | 45.49 | 45.49 |
| 3 | 46.22 | 46.22 | 46.22 | 46.22 | 47.15 | 47.15 | 48.09 | 48.09 |
| 4 | 48.72 | 48.72 | 48.72 | 48.72 | 49.70 | 49.70 | 50.69 | 50.69 |
| 5 | 51.13 | 51.13 | 51.13 | 51.13 | 52.16 | 52.16 | 53.20 | 53.20 |
| 6 | 52.16 | 52.16 | 52.16 | 52.16 | 53.20 | 53.20 | 54.26 | 54.26 |
| 7 | | 53.20 | 53.20 | 53.20 | 54.26 | 54.26 | 55.35 | 55.35 |
| 8 | | | 54.26 | 54.26 | 55.34 | 55.34 | 56.45 | 56.45 |
| 9 | | | | 55.34 | 56.45 | 56.45 | 57.58 | 57.58 |
| 10 | | | | | 57.58 | 57.58 | 58.74 | 58.74 |
| 11 | | | | | | 58.73 | 59.90 | 59.90 |
| 12 | | | | | | | 61.11 | 61.11 |

Notes:   Rates begin January 1 of each year.

Captain top of scale for 2006 through 2008 is Year 10.  First Officer top of scale for 2006 through 2008 is Year 6.  Each January 1 thereafter, top of scale increases by one year up to and including Year 12.  First year FO pay is the first-year first officer salary or rate under the US Airways or America West agreement as applicable.