IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

U.S. AIRLINE PILOTS ASSOCIATION,

    Plaintiff,

v.

U.S. AIRWAYS, INC.,

    Defendant.

Case No. 2:13-cv-0627

## MEMORANDUM OPINION

CONTI, Chief District Judge.

Pending before the court is a motion to dismiss the complaint for lack of subject-matter jurisdiction (ECF No. 17) filed by defendant U.S. Airways, Inc. ("U.S. Airways.") In support of this motion, U.S. Airways filed an initial brief (ECF No. 18), declarations (ECF Nos. 19 and 20), and a reply brief (ECF No. 28.) Plaintiff, U.S. Airline Pilots Association ("USAPA"), filed a brief in opposition to the motion (ECF No. 24), as well as a sur-reply brief (ECF No. 34.) USAPA's complaint (ECF No. 1) asks this court to confirm an order issued by a five-member System Board of Adjustment ("System Board") and to compel U.S. Airways to adhere to the order. (ECF No. 1 at 5.) The court held a hearing on U.S. Airways' motion to dismiss on September 26, 2013, at which time the court heard argument from the parties and gave its preliminary assessment. The matter being fully briefed, it is now ripe for disposition. Because there presently exists no justiciable case or controversy, U.S. Airways' motion to dismiss will be GRANTED, without prejudice to USAPA's ability to seek enforcement of the System Board's order should U.S. Airways violate it in the future.

I. FACTUAL BACKGROUND

USAPA is a private, unincorporated association operating as a labor association and is the certified collective bargaining representative of U.S. Airways' pilots and is a "representative" as defined by the Railway Labor Act ("RLA"), 45 U.S.C. §151, et seq. (ECF No. 1 ¶ 4.) U.S. Airways is a commercial airline with national and international operations, and is a "common carrier by air" subject to the RLA. (Id. ¶ 5.)

USAPA and U.S. Airways are parties to a collective bargaining agreement ("CBA"), titled the "Transition Agreement," which defines certain terms and conditions of employment for U.S. Airways' pilots. (Id. ¶ 1 & n.1 and ¶ 7.) Section X of the CBA requires the arbitration of disputes concerning the interpretation or application of the CBA. (Id. ¶ 8.) The CBA requires that arbitration be before a five-member System Board of Adjustment ("System Board") comprised of two members appointed by U.S. Airways, two members appointed by USAPA, and one neutral arbitrator. (Id.)

Pursuant to the CBA, in March and April 2009, the parties presented a dispute to the System Board concerning U.S. Airways' purported failure to "maintain minimum utilization rates"[1]. (Id. ¶ 9.) On October 16, 2009, the System Board granted USAPA's grievance and remanded the matter to the parties to determine the appropriate remedy. (Id.; and ECF No. 1-3.) The parties were unable to agree upon a remedy provision and returned to the System Board for hearings regarding the extent of damages and the appropriate manner by which the damages should be distributed to the pilots. (ECF No. 1 ¶¶ 10-11.) These hearings resulted in a May 30, 2012 Supplementary Opinion (the "Supplementary Opinion"), which awarded damages to

---

[1] Minimum utilization rates measure the minimum number of hours per day that an aircraft fleet is in use. The arbitration dispute in 2009 concerned how such hours should be calculated; i.e. whether the number of hours should be calculated on a monthly basis (as advocated by USAPA), or based on a twelve-month rolling average (as advocated by U.S. Airways). The System Board found in favor of USAPA and required U.S. Airways to cease its practice of determining minimum utilization rates based on a twelve-month rolling average.

2

certain pilots in the total sum of $999,250.00. (Id. ¶ 12.) In addition, the Supplementary Opinion ordered U.S. Airways to cease and desist from calculating minimum utilization rates using a rolling twelve-month average. (Id. ¶ 14; ECF No. 1-4 at 12.) USAPA attached to its complaint copies of the CBA (ECF No. 1-2), and the System Board's October 2009 opinion (ECF No. 1-3) and Supplementary Opinion (ECF No. 1-4), each of which is integral to the allegations of the complaint.

USAPA alleges in its complaint that U.S. Airways "refused…to comply with the…Supplementary Opinion, in that it has failed to cease and desist from engaging in the practices that led to its failure to maintain minimum utilization rates." (ECF No. 1 ¶ 14.) The complaint seeks an order from this court "confirming" the Supplementary Opinion and "compelling U.S. Airways to abide by" its terms. (Id. at 5.) In other words, USAPA contends in its complaint that U.S. Airways continues to calculate minimum utilization rates using a rolling twelve-month average, and asks this court to force U.S. Airways to instead calculate those rates on a monthly basis. In its briefing in opposition to U.S. Airways' motion to dismiss, however, USAPA repeatedly and unequivocally states that U.S. Airways has not violated the terms of the Supplementary Opinion. (ECF No. 26 at 11, 12; ECF No. 34 at 8-9.) In fact, USAPA indicates that it will amend its complaint, if necessary, to clarify that it is not seeking any remedies based on past or current violations of the Supplementary Opinion. (ECF No. 26 at 13.) USAPA reiterated this position at oral argument, confirming for the court that it does not allege and has no evidence to suggest that U.S. Airways has violated any term of the Supplementary Opinion.

## II. LEGAL STANDARD

A motion filed pursuant to Rule 12(b)(1) challenges a federal court's "very power to hear the case." Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). The burden of establishing jurisdiction lies with the party seeking to invoke the court's power. Id.; Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).

A Rule 12 (b)(1) motion to dismiss may raise a facial or a factual challenge to the court's jurisdiction. Mortensen, 549 F.2d at 891; see Gould Electronics, Inc. v. U.S., 220 F.3d 169, 176 (3d Cir. 2000). A facial challenge alleges that the complaint suffers from a technical defect in that its allegations do not sufficiently illustrate the court's jurisdiction. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §1350 (2d ed. 1990). By comparison, a factual challenge contends that a substantive defect prevents the court from having subject-matter jurisdiction over a dispute, regardless of what allegations are made in the complaint. Id. In considering a facial attack, a court must accept the allegations in the complaint as true and may not consider evidence beyond the allegations of the complaint. Petruska v. Gannon Univ., 462 F.3d 294, 302 n.3 (3d Cir. 2006). But if the attack is factual, no presumptive truthfulness attaches to the complaint's allegations and the court is free to weigh the evidence, including evidence outside of the complaint, to determine whether it has the inherent power to hear the case. Mortensen, 549 F.2d at 891.

Article III, § 2, of the United States Constitution restricts the federal "judicial Power" to the resolution of "Cases" and "Controversies." U.S. Const. art. III, § 2. Federal courts enforce the case-or-controversy requirement through various justiciability doctrines, including standing, ripeness, mootness, and the prohibition on advisory opinions. Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131, 137 (3d Cir. 2009) (citations omitted); see, e.g., DaimlerChrysler Corp. v. Cuno, 547 U.S. 332 (2006); The Pitt News v. Fisher, 215 F.3d 354, 359 (3d Cir. 2000). As a whole, these doctrines recognize that Article III requires "antagonism" between the parties

and "concreteness" of the dispute between them. State of New Jersey, Dept. of Envtl. Prot. and Energy v. Heldor Indus., Inc., 989 F.2d 702, 706 (3d Cir. 1993).

In order to have Article III standing, a plaintiff must have: (1) suffered an injury-in-fact; (2) that is fairly traceable to defendant's challenged actions; and (3) that is likely redressable by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). The United States Supreme Court in Lujan defined the injury-in-fact requirement as "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) 'actual or imminent,' not 'conjectural' or 'hypothetical.'" Id. at 560. An alleged injury must be "'certainly impending' to constitute injury in fact." Whitmore v. Arkansas, 495 U.S. 149, 158 (1990) (citing Babbitt v. Farm Workers, 442 U.S. 289, 298 (1979)). The "underlying purpose of the imminence requirement is to ensure that the court in which suit is brought does not render an advisory opinion in 'a case in which no injury would have occurred at all.'" Animal Legal Def. Fund, Inc. v. Espy, 23 F.3d 496, 500 (D.C. Cir. 1994) (quoting Lujan, 504 U.S. at 564 n.2). Federal courts are without power to give opinions that do no more than decide abstract, hypothetical or contingent questions. Rhone–Poulenc Surfactants and Specialties, L.P. v. Comm'r of Internal Revenue, 249 F.3d 175, 182 (3d Cir. 2001).

III. DISCUSSION

U.S. Airways' motion to dismiss asks whether a federal district court has the power to confirm summarily an arbitration award issued by a system board of adjustment pursuant to the RLA. The court answers that question in the negative because without a party seeking to enforce or vacate the award, there is no justiciable controversy.

5

### A. U.S. Airways Has Not Violated the Supplementary Opinion

Before proceeding with an analysis of the ultimate question raised by U.S. Airways' motion to dismiss, and to be clear at the outset, there is no dispute that the court would have the power to entertain this action were USAPA accusing U.S. Airways of violating the Supplementary Opinion. Int'l Ass'n of Machinists, AFL-CIO v. Central Airlines, Inc., 372 U.S. 682 (1963). Although USAPA's complaint asserts such a violation, (ECF No. 1 ¶ 14), in its briefing in opposition to the motion to dismiss and at oral argument, USAPA unequivocally and repeatedly disavows that allegation and instead explicitly acknowledges that U.S. Airways has not yet violated the Supplementary Opinion. (ECF No. 26 at 11, 12; ECF No. 34 at 8-9.) In fact, USAPA proclaims in its opposition brief that it will seek leave to amend its complaint to clarify that it is not pursuing a remedy concerning "any specific dispute" between the parties. (ECF No. 26 at 13.) For its part, U.S. Airways provides a declaration attesting to the fact that it "altered its methodology for calculating compliance with minimum utilization rates, using the average daily hours flown during that particular month, as opposed to a rolling 12 [sic] average." (ECF No. 20 ¶ 8.) The court can consider these statements, even though they are made outside of the complaint, because U.S. Airways made a factual attack on the jurisdiction of this court. Mortensen, 549 F.2d at 891.

The court can also proceed with its analysis based on the acknowledgement that U.S. Airways has not violated the Supplementary Opinion, even though USAPA argues in its sur-reply brief that subject-matter jurisdiction exists because the original dispute underlying the Supplementary Opinion is similar to the "October 2012 'dispute at hand.'" (ECF No. 34 at 5); Fleck v. KDI Sylvan Pools, Inc., 981 F.2d 107, 121 (3d Cir. 1992) (quoting Scarano v. Central R.R. Co., 203 F.2d 510, 513 (3d Cir. 1953)) (stating that the doctrine of judicial estoppel prevents parties from "playing fast and loose with the courts" by assuming contradictory positions during the course of litigation). Hurricane Sandy struck in October 2012, causing

6

widespread disruptions to airline schedules. After U.S. Airways contended in its motion to dismiss that these disruptions, and the alleged resulting failure to meet minimum utilization rates, were the true impetus behind USAPA's complaint (ECF No. 18 at 6-7), USAPA explicitly denied that its complaint was based on any past violation of the Supplementary Opinion, including any violations caused by Hurricane Sandy. (ECF No. 25 ¶ 5; ECF No. 26 at 7-9; ECF No. 34 at 4-5.) USAPA cannot change course by claiming in its sur-reply brief that there is a "dispute at hand" after admitting in its opposition brief that it was not seeking a remedy concerning any "specific dispute" between the parties. Regardless, in that same sur-reply brief, USAPA reverts to its original position by stating that "the Supplementary [Opinion] does not appear to have been violated in connection with the October 2012 minimum utilization requirement shortfall." (ECF No. 34 at 8.) Moreover, at oral argument USAPA explicitly confirmed its position that U.S. Airways has not violated the Supplementary Opinion. USAPA will be held to its admissions that U.S. Airways has not violated the Supplementary Opinion and the court will proceed to analyze the question raised by U.S. Airways' motion to dismiss based on that admission.

This court is being asked to confirm the Supplementary Opinion even though U.S. Airways has not violated it. To reiterate, the Supplementary Opinion directed U.S. Airways to discontinue its practice of using a twelve-month rolling average to calculate minimum utilization rates. Although there is no dispute that U.S. Airways previously engaged in that practice, there is also no genuine dispute that U.S. Airways has not engaged in that practice after the Supplementary Opinion was entered.

B. The Present Case is not Justiciable

U.S. Airways contends that USAPA cannot establish that a justiciable controversy exists because it admits that U.S. Airways has not violated the Supplementary Opinion. More specifically, U.S. Airways claims that USAPA cannot satisfy the minimal standing requirements under Article III because no current, specific dispute exists, and USAPA is instead seeking an advisory opinion judicially endorsing the Supplementary Opinion in case U.S. Airways fails to comply with its terms in the future. (ECF No. 28 at 2-3.) In response, USAPA contends that subject-matter jurisdiction exists to confirm, rather than enforce, the Supplementary Opinion under the authority set forth by the Supreme Court in Central Airlines and because the Supplementary Opinion includes prospective obligations. (ECF No. 34.) Alternatively, USAPA asserts that this court should bifurcate confirmation of the Supplementary Opinion from enforcement of it. (Id. at 10-12.)

1. Central Airlines Does Not Mandate Jurisdiction Over the Instant Case

At oral argument, USAPA contended that the Supreme Court's decision in Central Airlines mandates that this court exercise jurisdiction over the instant case. According to USAPA, Central Airlines held that federal courts have jurisdiction to confirm arbitration orders issued pursuant to the RLA, without requiring any allegation that the order has been violated or improperly entered. As indicated at the close of the oral argument, the court re-reviewed the Central Airlines decision, but still disagrees with USAPA's reading of it.

In Central Airlines, a union sued an employer that refused to comply with an adjustment board's order directing that certain employees be reinstated, without loss of seniority and with back pay. Central Airlines, 372 U.S. at 683. The district court dismissed the action, finding that neither diversity nor federal question jurisdiction existed. Id. at 684. The court of appeals affirmed, noting that "this suit is nothing more than a state-created action to construe a

8

contract." Id. The Supreme Court granted certiorari "to consider the important question of whether a suit to enforce an award of an airline system board of adjustment is a suit arising under the laws of the United States under 28 U.S.C. § 1331 or a suit arising under a law regulating commerce under 28 U.S.C. § 1337." Id. The Supreme Court held that it was both, and directed the district court to exercise jurisdiction over the case upon remand. Id.

In reaching this holding, the Supreme Court reviewed the history of the RLA, and its extension to the airline industry. Id. at 685-90. The Supreme Court emphasized that the arbitration procedures of the RLA's system adjustment boards reflected Congress' intent to move toward a reliable, uniform and effective system for the settlement of labor grievances in the common carrier industries. Id. at 689-90. For that reason, the Supreme Court concluded that orders issued by system adjustment boards pursuant to the RLA have the "imprimatur of the federal law" and are legally enforceable in federal court. Id. at 690. As a result, federal district courts could hear suits brought to enforce arbitration awards issued pursuant to the RLA in the context of the airline industry under their federal question jurisdiction. Id. As this court pointed out at oral argument, this might itself explain why the RLA does not include a mechanism, as does the Federal Arbitration Act ("FAA"), for pre-enforcement confirmation of an RLA-issued arbitration award; unlike an arbitration award entered into pursuant to a private agreement under the FAA, an arbitration award issued pursuant to the RLA carries with it the inherent power and force of federal law from its inception.

The Supreme Court did not answer the question asked in this case, i.e., whether an action seeking to confirm summarily an arbitration award issued by an RLA-created system adjustment board is justiciable in federal court. Central Airlines was an enforcement action – the employer refused to reinstate the employees in compliance with the adjustment board's order. Therefore, its holding cannot be extended to dictate that a federal court hear a matter that falls outside of its Article III authority to decide "cases" or "controversies." None of the passages in

9

the Supreme Court's decision identified by USAPA at oral argument compel such a result.

### 2. The Present Matter Is Not Justiciable

USAPA next argues that this matter satisfies the case or controversy requirement because the Supplementary Opinion includes prospective relief. USAPA relies heavily on Ameriprise Bank, FSB v. PNC Bank, Nat'l Ass'n, No. 12-1113, 2012 WL 5906400 (W.D. Pa. Nov. 26, 2012), in support of its argument on this point. In that case, the arbitration award stated that PNC must defend and indemnify Ameriprise Bank if one particular borrower sought a refund from the bank in the future. Id. at *2. The court found that an action to confirm the award pertaining to "PNC's prospective defense and indemnification responsibilities" satisfied Article III's case or controversy requirement. Id. at *8. The decision in Ameriprise, however, is distinguishable in two respects.

First, to the extent the Supplementary Opinion orders prospective relief, it is of a different kind than that ordered in Ameriprise. In Ameriprise, if a specific event occurred, i.e., one particular borrower sought a refund, then PNC Bank was obligated to undertake a specific action, i.e., defend and indemnify Ameriprise Bank. In the instant case, the Supplementary Opinion, from the date that it was entered, obligated U.S. Airways to use one method of calculating minimum utilization rates instead of another. U.S. Airways has no contingent obligations under the Supplementary Opinion, making pre-enforcement confirmation less important. However, even if this factual distinction did not exist or was without legal consequence, there is a second, and more important, distinction between the instant case and Ameriprise.

The court found in Ameriprise that the action to confirm the arbitration award satisfied Article III's case or controversy requirement because the statutory scheme of the FAA "clearly contemplates the confirmation of uncontested awards." Id. at *8, 10; see 9 U.S.C. § 9

10

(stating that, if certain conditions are met, a party may apply for a court order confirming an arbitration award). By contrast, the instant case is brought pursuant to the RLA, which differs from the FAA in two important ways. First, the United States Supreme Court has held that actions to enforce arbitration awards issued under the authority of the RLA arise under federal law and independently create jurisdiction under 28 U.S.C. §§ 1331 and 1337. Central Airlines, 372 U.S. at 695-96. By contrast, the FAA does not create any independent federal question jurisdiction. Ameriprise Bank, 2012 WL 5906400, at *8. Second, while § 9 of the FAA explicitly provides for summary confirmation of an arbitration award, the RLA includes no corresponding provision. 9 U.S.C. § 9. Instead, under the RLA, suit can only be brought in federal court if "a carrier does not comply" with an order issued by an adjustment board, or if a party "is aggrieved by any of the terms of an award." 45 U.S.C. § 153, first (p) and (q).[2] Because of this latter distinction in statutory language, decisions analyzing the FAA do little to advance USAPA's position.

USAPA did not identify any decision in which a court found that a party had standing to obtain an order confirming an arbitration award issued pursuant to the RLA, regardless whether it included prospective relief, without any allegation that the award had been violated or improperly entered. The court's independent research confirms that no such decision exists. The court's research located a recent decision from the United States District Court for the Southern District of Florida, which is the only case in which a federal district court was asked

---

[2] Although there is some dispute about whether § 153 of the RLA applies to the airline industry, 45 U.S.C. § 181, the Court of Appeals for the Third Circuit has long-applied that section's procedures and standards regarding entry and enforcement of arbitration awards to airlines. Hart v. Overseas Nat'l Airways, Inc., 541 F.2d 386, 392 n.15 (3d Cir. 1976); see Indep. Ass'n of Continental Pilots v. Continental Airlines, 155 F.3d 685, 689-90 (3d Cir. 1998) (stating that language of § 181 only deferred the issue of whether to establish a national adjustment board for the airline industry, and applying § 153's arbitration provisions to an airline industry dispute); Int'l Ass'n of Machanists, AFL-CIO v. Central Airlines, Inc., 372 U.S. 682, 685, 694 & n.18 (1963) (looking to § 153 for guidance in handling airline industry grievances, including "the finality to be accorded board awards").

11

to confirm an RLA-issued arbitration award "as a matter of course." Int'l Brotherhood of Teamsters v. Amerijet Int'l, Inc., 904 F.Supp.2d 1278, 1287-88 (S.D. Fla. 2012). In Amerijet, which U.S. Airways cites to in its briefing, the district court stated that the union's claims would "constitute mere hypothetical, and therefore non-justiciable, disputes" if the union could not allege specific violations of the RLA-issued arbitration award. Id. at 1288. Although Amerijet is not controlling, its facts are closely analogous to the matter before this court, and the court considers the Florida court's reasoning to be persuasive.

Similarly, various federal courts have also held, in the context of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, that confirmation of an arbitration award in the absence of a concrete dispute between the parties regarding enforcement or validity would violate the requirements of Article III. Derwin v. Gen. Dynamics Corp., 719 F.2d 484, 490-92 (1st Cir. 1983); 1199 SEIU United Healthcare Workers East v. Civista Med. Ctr., Inc., No. 10-0479, 2011 WL 310486, at *1-2 (D. Md. Jan. 28, 2011) (collecting decisions). In reaching its holding in Derwin, the Court of Appeals for the First Circuit stated that "absent a concrete dispute there is no way for the district court to know whether there is any matter which it can properly review and its order may merely serve to skew the bargaining balance between the parties." Derwin, 719 F.2d at 492. Again, although decisions from the Court of Appeals for the First Circuit and other district courts made pursuant to a different federal statute are not controlling, their reasoning is persuasive.

Upon independent analysis of the issue, this court likewise concludes that USAPA cannot establish that this action to obtain confirmation of the Supplementary Opinion satisfies the requirements of Article III. To reiterate, in order to have Article III standing, USAPA must establish that it has: (1) suffered an injury-in-fact, which is concrete and particularized and actual or imminent; (2) that is fairly traceable to U.S. Airways' challenged actions; and (3) that is likely redressable by a favorable decision. Lujan, 504 U.S. at 560-61. If USAPA's complaint poses

12

abstract, hypothetical or contingent questions, this court does not have the power to hear the case. Rhone–Poulenc, 249 F.3d at 182. Under these principles, USAPA does not have standing because it admits that U.S. Airways has not violated the Supplemental Opinion. Without an alleged violation, there cannot be a concrete, particularized and actual injury.

A potential, but unspecified, future violation of the Supplemental Order is not the kind of prospective harm that has been deemed sufficient to satisfy Article III. For instance, in Belitskus v. Pizzingrilli, a decision on which USAPA relies heavily in its sur-reply brief, the prospective injury was the inevitable depletion of personal or campaign financial resources upon paying a mandatory filing fee, which a candidate for office sought to challenge. Belitskus v. Pizzingrilli, 343 F.3d 632, 639 (3d Cir. 2003). Although that harm would happen in the future, it was concrete, imminent, and certain – if the candidate ran for office, she would have to pay the fee. By contrast, USAPA alleges only that it might possibly be harmed at some time in the future if U.S. Airways violates the Supplemental Opinion, in a way that it has failed to, and is unable to, articulate at the present time. This is not the kind of prospective harm that satisfies the case or controversy requirement of Article III; rather, the matter that USAPA places before this court raises abstract, hypothetical and contingent questions about what U.S. Airways may, or may not, do in the future, and whether that potential action may, or may not, violate a term of the Supplementary Opinion. This court does not have the power to issue any decision in these circumstances.

### 3. The Court Has No Judicial Power to Bifurcate This Action

Having no judicial power to hear this case under the United States Constitution, the court will not grant USAPA's alternative request that confirmation and enforcement of the Supplemental Opinion be bifurcated. Nevertheless, the court reviewed the authorities cited by USAPA in support of its position. They, however, do not compel the result advanced by

USAPA because the cases are brought pursuant to the FAA, or a state law equivalent, which provide, explicitly, for judicial confirmation of an arbitration award. As discussed above, under the RLA, judicial review of a systems board's arbitration decision is permitted only if the airline does not comply with the award, or any party is aggrieved by any of its terms. 45 U.S.C. § 153 First (p) and (q). This fundamental distinction in the statutory language of the FAA and the RLA compels a different result regarding the ability of a federal court to bifurcate confirmation from enforcement of an arbitration award issued pursuant to the RLA.

IV. CONCLUSION

For the foregoing reasons, USAPA cannot satisfy its burden to establish that this court has subject-matter jurisdiction over the matter presently asserted. Accordingly, this case must be dismissed, without prejudice to USAPA's ability to seek enforcement of the Supplementary Order should U.S. Airways violate it in the future. An appropriate order will be filed contemporaneously with this opinion.

Dated: September 30, 2013

Joy Flowers Conti
United States Chief District Judge